IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 23, 2019 at Knoxville

## STATE OF TENNESSEE v. MATTHEW HOWARD NORRIS

**Appeal from the Criminal Court for Putnam County**
**Nos. 17-CR-546, 17-CR-616, 17-CR-667        David A. Patterson, Judge**

_____

### No. M2018-01236-CCA-R3-CD

_____

The Defendant, Matthew Howard Norris, pleaded guilty to two counts of theft of property valued at more than $2,500 and one count of burglary in exchange for an effective eight-year sentence. At a subsequent sentencing hearing, the trial court ordered that the eight-year sentence be served in the Tennessee Department of Correction. On appeal, the Defendant asserts that the trial court erred when it denied his request for judicial diversion and for alternative sentencing. After review, we conclude that the trial court failed to consider the appropriate factors in determining the issue of judicial diversion; therefore, we reverse and remand for a new sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT H. MONTGOMERY, JR. JJ., joined.

Craig P. Fickling, District Public Defender, and Allison R. West, Assistant Public Defender, Cookeville, Tennessee, for the appellant, Matthew Howard Norris.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Beth E. Willis, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

The Defendant was arrested for participating in repeated burglaries of storage units. On July 10, 2017, a Putnam County grand jury indicted the Defendant in Case Number 546 for theft of property valued over $2,500 on February 22, 2017, in Case

Number 616 for burglary and theft of property valued over $2,500 on February 4, 2017, and in Case Number 667 for burglary and theft of property valued over $2,500 in late December 2016. Pursuant to a plea agreement, the Defendant entered a guilty plea to the theft charge in Case Number 546, the burglary charge in Case Number 616, and the theft charge in Case Number 667. The agreement provided that the sentence for each conviction would be four years, with the two sentences for the theft convictions to run concurrently and the sentence for the burglary conviction to run consecutively, for an effective sentence of eight years. The parties agreed to allow the trial court to determine manner of service of the sentence. As part of the plea agreement, the State dismissed the other charges in the indictments related to this appeal in addition to dismissing charges from unrelated indictments.

At the guilty plea hearing, the State offered the following factual basis in support of the trial court's acceptance of the Defendant's guilty pleas.

On 667, sometime between the dates of December 31st of '16 and January 3rd of '17, a storage unit on Pigeon Road was broken into. The victim reported several unit items that went missing, including ten machetes, a Beretta holster, three sets of soft body armor, a tactical vest, and multiple other items of military equipment. Detective, former Detective Ken Fry, who is now a sergeant on nights, but, anyways, investigated the case, developed [the Defendant] as a suspect. On a later case, his phone was confiscated. A search warrant was issued and executed on that search warrant -- or on that cellphone, and on the cellphone there were pictures of these items that I said earlier, the military equipment on his cellphone with text messages trying to sell those items to individuals. . . .

On case [6]16, Detective Fry also investigated this case. This is a situation where on February the 4th of 2017, Officer Gibbs, with the Cookeville Police Department, responded to another storage unit being broken into. When he arrived there, there was a car there that the [D]efendant had brought to the scene. He was there, along with a co-defendant, and they were caught in the middle of the burglary at that time. The victim was subsequently found out and was called to the scene to identify all the property that was taken from the storage unit there. That car that was sitting there, that the [D]efendant had brought to the scene, there was a scooter that was pushed halfway into the back seat where him and a co-defendant had tried to steal that scooter, and were in the process of pulling the scooter into the car when they were caught by the officers. There was also multiple other items that were found, some Nintendos, some Nintendo Play Stations, some computers, some Nintendo games, a bow, a

sword, just multiple items belonging to this victim, which the victim identified. There were bolt cutters that were located there on scene next to the fence in case the storage unit had to be cut, and there were other burglary tools that were in the car, and all these items were packed in the trunk of the car when the officers showed up.

. . . .

The last case is [ ]546, and that was a situation where the state's proof would be that some musical instruments were stolen out of another storage unit belonging to a victim here. The victim's friend is the owner and/or works at C & G Mountain Music. One particular day, he realized that one of the victim's items had been brought in and pawned, so he contacted the victim. The victim did in fact say that that drum set was his. Detective Fry investigated this. An individual who had gone to the music store with the [D]efendant had used his ID, because the [D]efendant claimed he didn't have one, to pawn that set of drums. Detective Fry hunted that individual down, talked to that individual, and that individual indicated [the Defendant] as being the one who wanted to pawn the drum set. He goes back to the Mountain Music Store and shows a photo lineup to the guy working there at Mountain Music, including [the Defendant's] picture in that photo lineup, and the guy said that he was the one. "He," being [the Defendant], was the one who actually brought in the drum set to pawn that particular day.

The trial court accepted the Defendant's guilty plea to two counts of theft of property valued over $2500 and one count of burglary.

At the June 8, 2018 sentencing hearing, Dannon Harbin testified that she prepared the pre-sentence report for the Defendant's case. The Defendant met with Ms. Harbin on April 25, 2018. Before the drug screen, the Defendant disclosed to Ms. Harbin "that he was going to test positive for marijuana." The Defendant told Ms. Harbin that, "he had tried marijuana around 2000 and his last use was 4/9/2018." The Defendant also reported methamphetamine use that began in January 2016. He stated that he had not used methamphetamine since 2017. The Defendant stated that he was not taking any prescription medication at the time. The results of the drug screen were positive for marijuana and oxycodone. Ms. Harbin confirmed that the Defendant had not had any drug or alcohol treatment.

- 3 -

During his interview with Ms. Harbin, the Defendant stated that he was employed at Imperial Staining and Paint but provided no verification of employment. He said that he began employment at Imperial Staining and Paint in April 2018.

Tennessee Highway Patrol Sergeant Ronnie Simmons testified about a pending case against the Defendant. Sergeant Simmons observed the Defendant driving a car without wearing a seatbelt on March 12, 2018, "[o]n State Route 135, just south of the interstate, be South Willow Avenue." After Sergeant Simmons activated his emergency lights, the Defendant made an abrupt turn from the left lane to the right lane and then into a gas station parking lot. Sergeant Simmons collected the Defendant's driver's license and went back to his patrol car to check the license number. As he sat in his patrol vehicle, he observed the Defendant moving around "excessively" in the car. Sergeant Simmons returned to the Defendant's car and asked him about his movements. The Defendant said he had nothing to hide and told Sergeant Simmons, "you can search me and the vehicle."

Sergeant Simmons testified that, pursuant to the Defendant's consent, he searched the Defendant's car and found digital scales stuffed inside work gloves inside the "glove box." Sergeant Simmons said that he had earlier seen the work gloves sitting on the front passenger seat when he first obtained the Defendant's license. On the driver's side of the vehicle Sergeant Simmons observed a "hard shell container" "inside the AC vent." Upon opening the container, Sergeant Simmons saw a baggie with what appeared to be methamphetamine and a glass pipe. He later weighed the substance, and it was three grams.

After hearing the evidence, the trial court confirmed with the parties the length of the sentences and that it was to determine the manner of service of the sentence. The Defendant's attorney argued in favor of probation and mentioned the Defendant's eligibility for judicial diversion within this context. She stated, "I think with him being eligible for diversion, he's a good candidate for probation." At the conclusion of her argument, she stated:

> So we would ask the court to consider the fact that he's eligible for diversion and I don't believe the state has presented a reason that he shouldn't be given that opportunity, Your Honor. So we would ask for eight years of probation and judicial diversion.

The trial court first stated the factors it was considering:

> The evidence received during the sentencing hearing; pre-sentence report; princip[le]s of sentencing and arguments as to sentencing

- 4 -

alternatives which have been laid out for the court by the attorneys. I'm going to take into consideration the nature and characteristics of the criminal conduct involved and statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. The [D]efendant has made no statement in his behalf and the court has no statement for it to consider.

The trial court then made the following findings as to sentencing:

The court is looking at mitigating and enhancement factors, but only as to the circumstances of the crimes and the history of the [D]efendant in determining whether or not he is an appropriate candidate for a probated sentence. The court does not know that it has a request for judicial diversion. It may have one made to it today, but it is going to deny judicial diversion. At one time eight year sentences were to be served. A sentence of eight, now it's ten, and I recognize that it's two fours that are running consecutively, but an eight year sentence is a real indication of serious offenses when we get to that point. The [D]efendant has had many charges, but no convictions except for traffic offenses.

It is important for the court to consider that during his intake or his pre-sentence report, when he is speaking with Ms. Harbin, the court understands that he's not under oath, but he is making his best effort to be forthright. He has shown a lack of candor and a lack of honesty with her when he says that he last used methamphetamine in 2017. The court finds that he's using methamphetamine, has it in his vehicle at the time that the officer stops him in March of 2018. The court considers that as something which helps the court in making its decision whether or not there should be probation, honesty of the [D]efendant.

The other consideration that the court makes is that he is positive for marijuana and oxycodone at the time that he's doing the pre-sentence report. It indicates to the court that he knows he's going to be sentenced. He knows that he has to do a drug screen. If he does not know that, he's the only defendant that's ever gone to the Department of Correction and not understood that he's going to have a drug screen. So the drug screen comes back positive for marijuana, which he has been using since 2000. Eighteen years of marijuana use, maybe that's [why] he has misunderstandings. But that misunderstanding and that use of oxycodone is something that the

court considers also as to whether or not he will be an appropriate candidate while on probation.

The Strong R is an indicator to the court of how well the [D]efendant will do while on probation. It helps this court to understand what is the possibility of him reoffending. A moderate is not a, it's not a mild or a strong indicator, but I've seen some that are not moderate and they are very appropriate I think for probation for the most part. I think these factors that the court is putting forth as it's making its decision is what the moderate Strong R is and a moderate Strong R is something that indicates to the court that there is more than [a] small chance that he's likely to offend again. I think he's likely to offend again because he is still using controlled substances for which he has not a pre[s]cription and which are still illegal in Tennessee and he's lying to the probation officer.

So knowing all of that the court finds that he has a previous history of criminal convictions or criminal behavior. Those convictions are only traffic offenses, but his behavior is and it's even previous to his plea in this case. The court understands that the [D]efendant has the burden of establishing his suitability for full probation, even if he is entitled to a statutory presumption of alternative sentencing. No criminal defendant is automatically entitled to probation as a matter of law and the court has to consider whether or not probation would serve the ends of justice and the best interest of both the public and the [D]efendant. In this case we have three victims. We have a bit of a crime spree where the [D]efendant is breaking into storage buildings. He is taking property undetected until finally it is detected, pawning, selling over quite a period of time. And the court takes that all into consideration in ordering that the eight year sentence is to be served in confinement, the Department of Correction determining when he is to be released.

It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court erred when it denied him judicial diversion and when it denied a probation sentence. The State responds that the trial court properly denied judicial diversion and alternative sentencing.

The standard of review for questions related to probation or any other alternative sentence is "'an abuse of discretion standard of review, granting a presumption of

reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act.'" *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court's decision regarding probation will only be invalidated if the court "wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). Under an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id*. at 475. The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5).

## A. Judicial Diversion

"Judicial diversion," provided for in Tennessee Code Annotated section 40-35-313(a), is the trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A)(2014). Although judicial diversion is not a sentence, pursuant to such diversion, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. T.C.A. § 40-35-313(a)(1)(B)(i)(b),(c). Diversion requires the consent of the qualified defendant. T.C.A. § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice - the interests of the public as well as the accused.

*Id*. (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc*., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

Although judicial diversion is not a sentence, our supreme court determined that the standard of review first expressed in *State v. Bise*, applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion." *King*, 432 S.W.3d at 325. Importantly, however, the court emphasized that the adoption of the *Bise* standard of review "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *King*, 432 S.W.3d at 326.

The trial court need not provide a recitation of all the applicable "factors when justifying its decision on the record in order to obtain the presumption of reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *King*, 432 S.W.3d at 327. When the trial court considers each of the factors enumerated in *Parker* and weighs them against each other, placing its findings in the record, as required by *Electroplating, Inc.*, we "apply a presumption of reasonableness," per *Bise*, and will "uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id*. When "the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." *Id*. Instead, "the appellate courts may either conduct a *de novo* review or, if more appropriate under the circumstances, remand the issue for reconsideration. "The determination as to whether the appellate court should conduct a *de novo* review or remand for reconsideration is within the discretion of the reviewing court." *Id*. at 328.

The State agrees that the trial court did not specifically list the required factors but contends that the trial court did consider the relevant factors in light of the somewhat unclear request for judicial diversion. We agree with the State that the Defendant's request for judicial diversion was somewhat ambiguous; however, the trial court clearly understood the request and rather cursorily denied it, failing to expressly address all of the relevant factors. In denying the Defendant's request, the trial court stated, "The court does not know that it has a request for judicial diversion. It may have one made to it today, but it is going to deny judicial diversion." This statement by the trial court does not "reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *King*, 432 S.W.3d at 327.

"'Where a trial court fails to consider all of the appropriate factors and its statement of the reasons for denial is vague and conclusory, this court will remand the matter for the trial court's consideration.'" *State v. Nicole Starcher*, No. E2011-02078-CCA-R3-CD, 2012 WL 3133811, at *3 (Tenn. Crim. App., at Knoxville, Aug. 2, 2012) (quoting *State v. Albert Fitzgerald Turner*, No. W2004-01853-CCA-R3-CD, 2005 WL

1812287, *4 (Tenn. Crim. App., at Jackson, Aug. 1, 2005)). As this court recently held, "This remedy is particularly appropriate in cases where the record before this court does not contain all of the relevant information. Here the record does not contain the judicial diversion application or the certificate of eligibility." *Id*. (citations omitted). The technical record on appeal does not include Defendant's application for judicial diversion or the certificate of eligibility issued by the Tennessee Bureau of Investigation. *See* T.C.A. § 40-35-313(a)(3)(A) (2014) (no order for judicial diversion may be entered without "a certificate from the Tennessee Bureau of Investigation stating that the defendant does not have a prior felony or Class A misdemeanor conviction").

Accordingly, we reverse and vacate the trial court's judgment and remand this matter for a hearing to properly consider Defendant's application for judicial diversion. On remand, the trial court should place on the record its analysis of all of the required factors, its weighing thereof, and the reasons underlying its decision.

### B. Probation

The Defendant asserts that the trial court improperly imposed a sentence of confinement. He argues that his lack of criminal history makes him a good candidate for an alternative sentence. The State responds that the evidence supports the trial court's imposition of a sentence of confinement. Because we have reversed and remanded this case for resentencing due to the trial court's failure to make appropriate findings regarding judicial diversion, we need not address this argument.

### III. Conclusion

After a thorough review of the record and applicable authorities, we conclude that the trial court failed to consider and weigh the applicable factors for determining the issue of judicial diversion. We therefore reverse the judgments of the trial court and remand for a new sentencing hearing.

_____
ROBERT W. WEDEMEYER, JUDGE

- 9 -